IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UPENDRA BHADAURIA, | § | |
|---|---|---|
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:17-CV-01457-N |
| HCL AMERICA, INC., | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant HCL America, Inc.'s ("HCL") motion for summary judgment [17]. Because HCL replaced Bhadauria to satisfy a client, the Court grants HCL's motion.

### I. ORIGINS OF THE DISPUTE

Upendra Bhadauria is a male Indian citizen and permanent U.S. resident. He claims that HCL, an IT company, discriminated against him on the basis of his race and sex. Bhadauria and HCL made first contact in August 2014. Bhadauria was intrigued by a job opening for the role of integrated delivery director for HCL's Southwest Airlines account. He interviewed with HCL leadership, and spoke with Southwest's Chief Technology Officer, Suzy McCown. He got the job on December 1, 2014. It was clear from the outset that the Southwest account was on thin ice. Bhadauria and his immediate supervisor, Subhesh Pakrashi, were brought on with hopes of righting the ship. His first full day of work was on January 2, 2015.

MEMORANDUM OPINION AND ORDER – PAGE 1

A few weeks later, things started to go south. Pakrashi began receiving negative feedback from McCown. He testified that she noted Bhadauria was not proactive, expressed she had trouble trusting the things he said, and questioned whether Bhadauria was "the right guy to turn this situation around for HCL." Def.'s Mot. for Summ. J., 7 [17] ("Mot."). Pakrashi began looking for Bhadauria's replacement shortly after.

On January 22, he interviewed Irene Escalante. Escalante had more managerial and client-facing experience than Bhadauria, and she impressed Pakrashi in the interview. After some consideration, Pakrashi and other members of HCL's leadership group determined she was the best fit for the role. She was hired as a Director, a position one pay band above Bhadauria's.

Two months later, Pakrashi told Bhadauria he was being removed from his role. Pakrashi made clear that HCL intended to transition Bhadauria to a different role within the company. Between Bhadauria's removal and May 2015, HCL's leadership searched for that different role, but the search was not fruitful. By May, they decided it was time to give up. HCL sent Bhadauria a termination letter on May 7, 2015, and set his official termination date for two weeks later.

Bhadauria immediately responded by filing a complaint of discrimination with human resources. He asked for a formal investigation and that his termination date be postponed until the investigation was concluded. HCL complied. It investigated Bhadauria's case from May to July, ultimately concluding no discrimination took place. As a result, on July 20, 2015, HCL terminated Bhadauria.

Bhadauria filed two charges with the E.E.O.C. After receiving a right to sue letter, he filed suit in state court in Dallas alleging violations of the Equal Pay Act, 29 U.S.C. §206(d)(1), and Chapter 21 of the Texas Labor Code. HCL removed the case to this Court. HCL now moves for summary judgment.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS SUMMARY JUDGMENT FOR HCL AS TO BHADAURIA'S STATE LAW CLAIMS

#### A. *Legal Standard for Chapter 21 of the Texas Labor Code*

Bhadauria's state law claims should be analyzed under the Title VII legal framework. *Daniels v. City of Arlington, Tex*, 246 F.3d 500, 507 (5th Cir. 2001) (citing *Chevron Corp. v. Redmon*, 745 S.W. 2d 314, 316 (Tex. 1987)). Title VII claimants may use either direct or circumstantial evidence to prove discrimination. *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d, 722, 732 (5th Cir. 2014). Bhadauria has chosen the latter method of proof. Pl.'s Br. in Supp. of His Resp. to Def.'s Mot. for Summ. J., 29 [21] ("Resp."). Thus, the Court must review his claims using the three steps articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Agoh*, 992 F. Supp. 2d at 722.

First, Bhadauria must establish a prima facie case of racial or sex-based discrimination. *McDonnell Douglass*, 411 U.S. at 802. HCL concedes that Bhadauria has met this burden. Mot. at 35. Next, the burden shifts to HCL to "articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglass*, 411 U.S. at 802. It is beyond dispute that HCL has done so. It claims that Bhadauria was removed due to changing business expectations and terminated when HCL could not find a reasonable replacement role.[1] *See e.g.* Mot. at 35. Thus, the Court's job comes down to the third and final step: deciding whether a reasonable jury could conclude that HCL's reasons for removing and

---

[1] Bhadauria also appears to concede that HCL has articulated a nondiscriminatory reason in his response by only raising arguments with respect to the third step in the *McDonnell Douglas* framework concerning pretext.

terminating Bhadauria were mere pretext, and that it was really motivated by Bhadauria's sex or race.

Bhadauria identifies four parts of the record that he believes could lead a reasonable jury to conclude that HCL's reasons for its actions were mere pretext: (1) the inconsistency between HCL's explanations for removing Bhadauria; (2) HCL's failure to forward McCown's feedback to Bhadauria and give him a chance to improve; (3) HCL's failure to use the internal policy it reserves to terminate employees for performance issues; and (4) three remarks Pakrashi made to Bhadauria. The Court disagrees with Bhadauria, and holds that no reasonable jury could infer that HCL's explanations were mere pretext.

### B. Whatever Inconsistencies Exists in HCL's Explanations Do Not Create an Inference of Pretext

Bhadauria argues HCL gave him three inconsistent explanations for his removal.[2] First, he says Pakrashi gave him "no specific reason" at all, merely telling him that it would be "best" if he was reassigned to a different role. Resp. at 6. Second, Bhadauria says he received a series of "no fault" explanations. Resp. at 23. These included an email from Pakrashi citing "changed business conditions," a human resources representative's statement citing role redundancy, and another representative's email citing role restructuring that did not match his skill sets. Resp. at 6-8. Finally, he argues HCL responded to interrogatories

---

[2] There does not appear to be a dispute as to the HCL's reasons for Bhadauria's termination. Bhadauria's termination letter stated that he was fired because HCL could not find another suitable role. Resp. at 20. Bhadauria restricts his arguments to HCL's explanations for his removal. As such, the Court will treat HCL's reasons for his termination as undisputed, and focus only on the reasons for his removal.

surrounding the reasons for his removal by citing McCown's "dissatisfaction" with Bhadauria's service and performance. Resp. at 9-11.

While there is some legal basis for inferring pretext from inconsistent explanations, it does not apply here. Looking closely at the cases Bhadauria cites reveals why. In *Caldwell v. KHOU—TV*, 850 F.3d 237 (5th Cir. 2017), the employer's different reasons lacked a single common thread. First, Caldwell was lazy and shirked his responsibilities. *Id.* at 243. Next, he simply didn't take the initiative to do optional tasks. *Id.* Then, he was unable to adapt to technological changes. *Id.* Finally, his termination had "absolutely nothing at all to do with Caldwell's work ethic." *Id.* Similarly, in *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2017), the Fifth Circuit found pretext based on several unexplained discrepancies in the testimony of the employer. The point is that in both cases the inconsistencies were so great that it was entirely reasonable to find the proffered explanation to be no explanation at all.

This is not the case here. It is undisputed that HCL used different language each time it gave Bhadauria an explanation. But each explanation was from the same cut of cloth: in light of McCown's complaints, HCL realized Bhadauria was not the right fit for the job. Pakrashi told him they wanted to reassign him because he did not fit the job in light of McCown's complaints. Human resources told him the business needs changed because he did not fit the job in light of McCown's complaints. And HCL brought up McCown's dissatisfaction in their responses to interrogatories because that feedback made it clear he did not fit the job. This is not the kind of blatant inconsistency that marked *Caldwell* and *Gee*.

The takeaway cannot reasonably be that HCL lacked a reason altogether. It merely used different words to say the same thing: Bhadauria was not meeting the mark and had to be replaced. Accordingly, the Court holds that no reasonable jury could find pretext based on HCL's reasons for Bhadauria's removal.

### C. HCL's Failure to Relay McCown's Feedback to Bhadauria and Give Him a Chance to Improve Does Not Create an Inference of Pretext

Bhadauria next argues that a jury could reasonably conclude HCL's explanation was pretext for discrimination because no one informed him of McCown's negative feedback,[3] and Pakrashi began looking for a replacement before giving him a chance to improve. The Court disagrees.

In cases where the Fifth Circuit found an employer's failure to give an employee a chance to improve to be evidence of pretext, the circumstances were quite different. In *Laxton v. Gap*, 333 F.3d 572, 581 (5th Cir. 2003), for instance, the critical fact was that the employer testified that it made sense "from a business standpoint" to give the employee another chance before firing her.[4] Thus, the fact that the employer did not give the employee

---

[3] While the parties appear to dispute this fact, the Court must accept Bhadauria's contentions for summary judgment purposes.

[4] Bhadauria also cites *Walther v. Lone Star Gas Co.*, 952 F.2d 119 (5th Cir. 1992), to argue a jury can infer pretext from HCL's lack of written documentation of Bhadauria's performance issues. The Court does not read *Walther* to support such an argument. The dispositive fact in *Walther* was that the employer failed to point to *any* evidence of poor performance. That fact gave serious reason to doubt the employer's performance based explanation. But nothing in the opinion suggests the employer had to point to *written* evidence to avoid that conclusion. *Walther* merely requires an employer to point to some evidence in support of its explanation, which HCL has done with the McCown feedback.

a second chance poked a major hole in its nondiscriminatory explanation. The opposite is true here. HCL has argued that keeping Bhadauria on would have risked losing the Southwest account. Def.'s Reply in Supp. of Mot. for Summ. J., 18 [26] ("Reply"). It is not clear how failing to relay McCown's feedback or give Bhadauria a chance to improve his behavior pokes any holes in its explanation that it had to move fast to fix a bad situation, and that the fix required replacing Bhadauria. As such, the Court holds no reasonable jury could infer pretext on this basis.

### D. HCL's Failure to Follow its PIP Process Before Removing and Terminating Bhadauria Does Not Create an Inference of Pretext

Bhadauria's next basis for arguing pretext has to do with HCL's internal policies for removing employees. He argues that because HCL did not follow the procedure it has in place for removing an employee for pure performance related reasons, there is reason to believe its explanation is mere pretext. The Court disagrees.

It is undisputed that HCL has two relevant processes. For pure performance related issues, it uses the procedure Bhadauria cites: a formal performance improvement plan (PIP) is put in place, and if the employee does not improve, the supervisor sends detailed feedback to human resources, and the employee is terminated. Resp. at 13-14. If it is not a case of "pure nonperformance" or is "related with any other associated reasons," HCL uses a different procedure called the Onsite Advanced AFD Declaration Process (AAFD). *Id.* at 14. The AAFD requires supervisors to give advance notice to the workforce planning team once he or she suspects the employee's position is going to end. Reply at 11. The team then begins to search for a different position within HCL for the employee. *Id.*

That HCL used the AAFD and not the PIP in Bhadauria's case does not create a reasonable inference of pretext. The PIP process was not used for Bhadauria for the rather obvious reason that it did not apply to Bhadauria. Both parties cite testimony from an HCL representative explaining that the PIP is reserved for instances "when there is a clear indication that [removal is due to] pure nonperformance on behalf of an employee and [is] not related to any other reasons. . . ." Resp. at 14; Reply at 13. At no point has HCL alleged this to be a case of pure nonperformance. No one has claimed that Bhadauria was a bad employee in general. HCL's position has always been that, in light of McCown's feedback, it became clear Bhadauria was simply not the right fit for the Southwest account. HCL did not use the PIP because at no point was there any evidence to suggest he would not fit elsewhere in HCL. Far from creating a reasonable basis for inferring pretext, that HCL followed the AAFD policy for Bhadauria actually makes their explanation even more credible. Accordingly, the Court holds that no reasonable jury could infer HCL's explanation was mere pretext based on HCL's failure to use the PIP process.

### E. Pakrashi's Comments Do Not Create an Inference of Pretext

Bhadauria's last argument for pretext is based on three remarks Pakrashi made while the two worked together. First, in mid-January or early February, Pakrashi suggested "he felt another vendor working with Southwest, TCS, got better treatment and business by virtue of having a delivery director of the same sex as the client representative (Suzy McCown)." Resp. at 15. Bhadauria claims Pakrashi said something along these lines again shortly after. *Id.* Third, he claims Pakrashi told him that it was "easier for Caucasians to do business with

Southwest because of cultural similarities." Resp. at 16. These remarks fail to establish a reasonable grounds for inferring pretext for two reasons.

First, the Fifth Circuit has made clear that stray remarks are not enough to create circumstantial evidence of discrimination when no other evidence of pretext exists. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 n.14 (5th Cir. 2003). The discussion up to this point suggests there is no other evidence of pretext here. The explanations that Bhadauria claims are inconsistent are not so inconsistent to create an inference of pretext. Similarly, the facts that HCL failed to give Bhadauria a chance to improve or follow the PIP process do not create any reasonable basis for doubting HCL's explanation for its actions. Thus, per Fifth Circuit law, there is reason to conclude that these stray remarks cannot be relied on to create an inference of pretext.

But even if Bhadauria's other arguments did constitute real circumstantial evidence of discrimination, the stray remarks would still not tip the scales to create a reasonable inference of pretext. The question comes down to this: could a reasonable jury infer that HCL thought Bhadauria was not the right fit for the job *because* he was not a woman or white? The Court thinks not. The issue turns on McCown's feedback. The testimony concerning her statements is undisputed,[5] and tells the story of the triggering action that set this case in motion. HCL was already on thin ice with Southwest. Southwest's client

---

[5] Bhadauria disputes that he was told about this feedback. Resp. at 26. But he has admitted that he has "no idea" what McCown told Pakrashi. App. for Pl.'s Br. in Supp. of his Resp. to Def.'s Mot. for Summ. J., 022 [22]. As such, the Court considers Pakrashi's testimony of McCown's statements undisputed.

representative reported that Bhadauria was not meeting expectations. HCL had to move fast and it had to replace Bhadauria—not because he is an Indian man, but because he simply couldn't meet the client's expectations.

Thus, the Court holds that no reasonable jury could conclude HCL acted in mere pretext. The Court grants HCL summary judgment and dismisses Bhadauria's state law claims with prejudice.

### IV. THE COURT GRANTS SUMMARY JUDGMENT FOR HCL AS TO BHADAURIA'S EPA CLAIMS

#### *A. Legal Standard for the Equal Pay Act*

The Equal Pay Act added to "the Fair Labor Standards Act of 1938 the principle of equal pay for equal work regardless of sex." *Corning Glass Works v. Brennan*, 417 U.S. 188, 190 (1974). To establish a prima facie case under the Act, Bhadauria must show first that HCL is subject to the EPA. *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). HCL has conceded it is. Mot. at 39. Next, Bhadauria must show (1) that he "performed work in a position requiring equal skill, effort, and responsibility under similar working conditions"; and (2) that he was "paid less than the employee of the opposite sex providing the basis of comparison." *Chance*, 984 F.2d at 153. Importantly, the comparison "relates to job content rather than job title or description." *E.E.O.C. v. Hernando Bank, Inc.*, 724 F.2d 1188, 1196 (5th Cir. 1984) (citing *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041 (5th Cir. 1973)).

If Bhadauria meets this threshold, the burden shifts to HCL to prove that the differential is indisputably justified under one of the Act's four exceptions. *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983) (quoting *Corning Glass*, 417 U.S. at

196). These exceptions are: (1) a seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) "a differential based on any other factor than sex." 29 U.S.C. §296(d)(1).

### *B. The Pay Differential is Explained by a Factor Other Than Sex*

Bhadauria has made out a prima facie case under the EPA. It is undisputed that he was in a lower pay scale than Escalante. In addition, the jobs required "equal skill, effort, and responsibility under similar working conditions." *Chance*, 984 F.2d at 153. HCL confirmed this by noting it "does not contend that the day to day job duties and responsibilities [of the job] changed." Reply at 5. The role the two shared required the same skill, even if Bhadauria was removed because he lacked that skill. Accordingly, Bhadauria has made out a prima facie case under the EPA.

But it is beyond reasonable dispute that HCL has justified the pay disparity with a "differential based on any other factor than sex." 29 U.S.C. §206(d)(1). It is undisputed that Escalante was more experienced in management and had more expertise. Mot. at ¶20, n.10. This is precisely what HCL determined it needed in Bhadauria's role given McCown's feedback. It paid Escalante more because of her skill and experience differential. This type of decision "qualifies as a bona fide exemption to the EPA." *E.E.O.C. v. TXI Operations, L.P.*, 394 F. Supp. 868, 879 (5th Cir. 2005). Thus, Bhadauria's EPA claim fails as a matter of law, and the Court dismisses it with prejudice.

## CONCLUSION

For the reasons stated above, the Court grants Defendant's motion for summary judgment.

Signed February 4, 2019.

David C. Godbey
United States District Judge